IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| William Lincoln, Jr., ) | |
| ) | Civil Action No. 2:11-3234-DCN-BHH |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Employment Services, d/b/a Centura ) | |
| College, David Riggs, April Green, ) | |
| Katrina Varner, Gerald Yagen, and June) | |
| Barksdale, ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court on the defendants' motion for summary judgment [Doc. 79] pursuant to Federal Rule of Civil Procedure 56. The plaintiff has pled claims pursuant to Title VII of the Civil Rights Act of 1964, as amended. The plaintiff contends that his employment was terminated on account of his race.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## **FACTUAL BACKGROUND**

Defendant Centura College is an adult education college with locations in Virginia and South Carolina, including a campus in North Charleston. The plaintiff, an African American, was hired by the defendant college, on or about June 27, 2001, as an instructor, making $10.00 per hour. (Def. Exs. C, D.) On or about June 12, 2007, the plaintiff left his employment with the defendant because of "family problems." (Def. Ex. F; Pl. Dep. at 37.)

The plaintiff was re-hired as a part-time instructor, on September 24, 2007. (Def. Ex. G; Pl. Dep. at 37.) At some point during 2008, the plaintiff was offered a position as an IT technician as well as an instructor. (Pl. Dep. at 189-90.) The plaintiff did not accept the

position, and the job was offered to, and eventually accepted by, Jim Copeland. (Pl. Dep. at 190-91, 193-94.) On or about August 18, 2008, the plaintiff was promoted to a full-time position as the Network Technology (NT) Coordinator over the defendant's NT program and became a salaried employee. (Def. Ex. H; Pl. Dep. at 38-40.)

The defendants have put forward evidence that, by the spring of 2009, the number of students enrolled in the NT program had decreased and that the defendant made the decision to eliminate the program completely. (Green Aff. ¶¶ 6-7.) The plaintiff was told of the decision. (Pl. Dep. at 94-96, 207-08.) Effective September 14, 2009, the plaintiff became a part-time Instructor, but continued to earn the same hourly rate he earned as Program Coordinator. (Def. Exs. R, S.) He was encouraged to apply for other jobs, if he wished to maintain employment. (Green Aff. ¶ 9.) The plaintiff had not obtained alternate employment with the defendant prior to the elimination of the NT program. (Green Aff. ¶ 11.) On December 4, 2009, the defendant's NT program ended, and the plaintiff's position was eliminated. (Green Aff. ¶ 12; Def. Ex. U.)

The plaintiff alleges that he should have been awarded Copeland's IT tech position, for his seniority and better qualification. The plaintiff also alleges that the defendants conspired against him in numerous ways. Specifically, he contends that he reported embezzlement and corruption and a conspiracy related to the defendant's janitorial company and that the defendants retaliated against him as a result. He contends that he was disparaged in various meetings and affidavits on account of his race. He also alleges that he was given a poor performance evaluation for specious reasons. Ultimately, the plaintiff accuses the defendants of firing him for racial reasons rather than any elimination of the NT program.

## APPLICABLE LAW

The court shall grant summary judgment "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## **DISCUSSION**

The Court would acknowledge that the plaintiff may have legitimately faced some mistreatment or undeserved difficulty at work. Some of the facts are irregular. But, there is no evidence that his experience was racially motivated.

The defendants liberally interpret the language in the Amended Complaint to suggest that the plaintiff makes two Title VII related claims: (1) discriminatory discharge and (2) hostile work environment.[1] The Court perceives no claim for hostile work environment but does view the Amended Complaint as stating one for retaliation.

**I.    Race Discrimination**

As stated, the plaintiff contends that his employment was terminated on account of his race in violation of Title VII. Initially, the Court would say that the claims against the individual defendants should be dismissed; those claims are not cognizable under Title VII. *See Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180-81 (4th Cir. 1998).

As for the remainder of the claim, the Fourth Circuit has explained, a Title VII plaintiff may "avert summary judgment . . . through two avenues of proof." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (emphasis added). A plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision. *Diamond*, 416 F.3d at 318. Pursuant to the 1991 Act, the impermissible factor need not have been the sole factor. As

---

[1] The plaintiff also references 42 U.S.C. § 1981 as a jurisdictional basis but specifically states that the action is brought pursuant to Title VII. (Amend. Compl. at 3.)

4

long as it motivated the adverse action, the plaintiff can establish an unlawful employment practice. *See* 42 U.S.C.A. § 2000e-2(m). Alternatively, a plaintiff may "proceed under [the McDonnell Douglas ] 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285.

Not unexpectedly, the plaintiff, as a *pro se* litigant, does not make any particular election or fashion his arguments consistent with a particular proof approach. He does not, however, have direct evidence of discrimination, as that term is understood. The Court would consider the claim under the *McDonnell Douglas* burden-shifting proof scheme, therefore.

*McDonnell Douglas* requires that an employee first prove a *prima facie* case of discrimination by a preponderance of the evidence. If he succeeds, the employer has an opportunity to present a legitimate, nondiscriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the *prima facie* case drops out of the picture, and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court reiterated that evidence of pretext, combined with the plaintiff's *prima facie* case, does not compel judgment for the plaintiff, because " [i]t is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." *Id.* at 147 (citation omitted). However, the Court also stated that, under the appropriate circumstances, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* It

is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination. *See id.* at 147-48. Pretext analysis does not convert Title VII into a vehicle for challenging unfair--but nondiscriminatory--employment decisions. *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir.1989). Conclusory allegations, without more, are insufficient to preclude the granting of the defendant's summary judgment motion. *See Ross* v. *Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985) *abrogated on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

### *Prima Facie* Case

To establish a *prima facie* case of discriminatory discharge, the plaintiff must show: (1) that he is a member of a protected class; (2) that he suffered from an adverse employment action; (3) that at the time the employer took the adverse employment action she was performing at a level that met her employer's legitimate expectations; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances. *See Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 133 (4th Cir.2002). The defendant contends that the plaintiff cannot establish the fourth element of his *prima facie* case.

"The precise requirements of a prima facie case can vary depending on the context and were never intended to be rigid, mechanized, or ritualistic." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (U.S. 2002) (quotations omitted). Although other evidence might suffice, the Court is generally open to evidence that similarly situated employees outside the protected class received more favorable treatment. *See White v. BFI Waste Servs.*, LLC, 375 F.3d 288, 295 (4th Cir. 2004).

The plaintiff has identified a variety of bases for his discrimination claim. (See Amen. Compl. ¶¶ 18, 24, 29, 31-33, 34.) Most, however either fail to identify a specific comparator, outside the protected class, who was treated differently, or otherwise do not reflect on any race based consideration. *See White*, LLC, 375 F.3d at 295; (Amend. Compl. ¶¶ 31-33, 86.)

And, some allegations relate to hypothetical rather than actual conduct of the defendant. *See id.* ¶¶ 29, 34 ("I would have been fired . . . ."). These allegations, and any related evidence, fail to satisfy the fourth element of his *prima facie* case.[2]

The plaintiff has identified only one individual, outside the protected class, who was allegedly similarly situated and yet treated differently. Specifically, he has identified Jim Copeland, an allegedly comparable Information Technologies (IT) technician, whose employment was not terminated as a result of the defendant's decision to eliminate its Network Technology (NT) program.

This District has indicated that a "plaintiff must establish that 'other employees' were similarly situated in all relevant respects; that they 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *See Ward v. City of North Myrtle Beach*, 457 F. Supp. 2d 625 (D.S.C. 2006). Although the undersigned believes that the fourth element is slightly more flexible in its demands, the Court will generally evaluate whether, under this view, Copeland is a reasonable comparator. *See White*, LLC, 375 F.3d at 295.

The plaintiff, without citation, contends that Copeland was "the IT tech for the NT Building" while the plaintiff was "the IT tech for the main building." (Pl. Resp. at 11.) The defendant, however, has put forward evidence that the plaintiff was the NT program coordinator and not an IT technician, like Copeland. (Def. Ex. H; Pl. Dep. at 38-40.) Indeed, the plaintiff was apparently offered an IT technician position in 2008, but he declined

---

[2] The plaintiff has complained exhaustively about his treatment with respect to a student named Tony Godwin. Apparently, the plaintiff was accused of marking Godwin present, when he was only in class for 10 minutes. (Pl. Resp. at 7; Amend. Compl. ¶ 42.) Although he was chastised for marking the plaintiff present when he everyone agrees that he missed significant parts of the term, the plaintiff has produced evidence that Godwin somehow made the Honor Roll. (Pl. Ex. A at D5.) Neither party has well described the affair, notwithstanding its ostensible and relative importance to the plaintiff. Nevertheless, the plaintiff has not tied it to any racial detail. There is no comparable conduct of a white employee or other incident of discrimination to allow this dispute over Godwin to matter.

7

it.  (Pl. Dep. at 189-94.)  Critically, the defendant has put forward evidence that the IT Technician position is not a part of the NT program, which was eliminated.  (Green Aff. ¶ 13.)  It is not disputed by the plaintiff.  Accordingly, the plaintiff cannot say that his position, indisputably a part of the NTprogram, was eliminated under circumstances where Copeland's should have been as well.

These details are critical for two reasons.  First, the sheer difference in positions makes Copeland and the plaintiff unsuitable for comparison.  But, more importantly, in this case, the plaintiff had an opportunity to leave the NT program, and take the IT position, a year before the NT program was eliminated, which he declined.  (Pl. Dep. at 189-94.)  Copeland was only offered that position after the plaintiff declined it.  So none of the circumstances surrounding the relative difference in the positions of Copeland and the plaintiff can even be attributed to conduct of the defendant; it was his own decision.

The plaintiff, however, argues that, as an objective matter, he was simply more qualified for the IT tech job and, therefore, entitled to it, even as it was occupied by Copeland.  He claims, "There is absolutely nothing that Jim Copeland can do that I can not do in IT work."  (Pl. Resp. at 10.)  He also accuses Copeland of irresponsibility and excessive drinking.  *Id.* at 11.  But, the plaintiff misses the point.  The defendant apparently agreed that the plaintiff was more qualified: they offered him the IT tech job first.  But, as already established, the plaintiff declined.[3]  The defendant was not required later, to remove Copeland from a job that the plaintiff did not want, and which was not a part of a department subject to elimination, just to spare the plaintiff's own employment.  *See Patterson v. Am. Tobacco Co.*, 535 F.2d 257, 267-68 (4th Cir. 1976) (rejecting any obligation to demote or "bump" incumbents from a position).

---

[3] The plaintiff quibbles that he did not turn the job down but that he just concluded he would "teach, so I can do my IT work later on."  (Pl. Dep. at 191.)  In fact, the plaintiff testified that he was going to start his own business and be an "independent IT contractor."  (Pl. Dep. at 190.)

The plaintiff has also claimed that he was moved from the NT Building to the main building but that Copeland was allowed to stay in the building.  (See Pl. Ex. A at D10-D12.)  In a non-retaliatory context, an adverse employment action is defined as "a discriminatory act which 'adversely affect[s] "the terms, conditions, or benefits" of the plaintiff's employment.'" *James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir.2004) The plaintiff, however, has not indicated in what way move has adversely affected any term, condition, or benefit of his employment.  Indeed, his own evidence indicates that his classes were taught in the main building.  (Pl. Ex. A at D12.)  There is no evidence that he was negatively impacted by the move.  (Although, the building move my qualify as an adverse employment decision for purposes of his retaliation claim, discussed *infra*, that claim fails for other reasons.)

Because, the plaintiff has not produced any evidence that individuals outside the protected class were treated differently, he cannot make out a *prima facie* case of discriminatory discharge.  That claim should be dismissed.

**II.     Retaliation**

The plaintiff has made numerous retaliation allegations.  Most notably, he contends that he was retaliated against for reporting embezzlement, corruption, and a conspiracy related to the defendant's janitorial company.  (Amend. Compl. ¶¶ 18, 22-24; Pl. Dep at 198-99, 271-72.)   Nowhere, however, does the plaintiff ever allege that he reported or complained about any discrimination on account of his race.  In fact, he expressly testified that he did not:

> Q: . . . But was there ever any time that you spoke to anybody at Centura College, during any of these complaints that you were raising, that you actually said, I believe I'm being treated differently, poorly, in a harassing manner, or anything else, because of my race?
>
> A: No sir. I never said "race." . . . Mr. Copeland is obviously white and I'm obviously black . . . Because he's white, he got preferential treatment.  That's the only thing I can think of."

9

(Pl. Dep. at 82.)

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of [its] employees . . . because he [or she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).   In order to establish a *prima facie* case of Title VII retaliation, the plaintiff must prove three elements: (1) that he engaged in a protected activity, (2) that an adverse employment action was taken against him, and (3) that there was a causal link between the protected activity and the adverse employment action.  *See EEOC v. Navy Federal Credit Union,* 424 F.3d 397, 406 (4th Cir. 2005).

Importantly, the Fourth Circuit has stated, "by its very terms, [the statute] requires that the employee at least have actually opposed employment practices made unlawful by Title VII. That is to say, the clause protects opposition neither to all unlawful employment practices nor to practices the employee simply thinks are somehow unfair."  *McNair v. Computer Data Sys., Inc.*, 172 F.3d 863, 1999 WL 30959, at *5 (4th Cir. Jan.26, 1999). Other courts have similarly concluded.  *See, e.g., Jeseritz v.. Potter*, 282 F.3d 542, 548 (8th Cir.2002) (finding opposition activity must be directed towards employer behavior that the employee reasonably believes to be "in violation of the statute in question"); *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir.1995) (finding in an ADEA case, "a general complaint of unfair treatment does not translate into a charge of illegal age discrimination"); *Peeples v. Coastal Office Prods., Inc.*, 203 F. Supp.2d 432, 466 (D. Md. 2002) (finding an email from an employee claiming he was "protected by the ADA" was not opposition activity because it did not claim the employer "was then or was about to violate the ADA").

Accordingly, because the plaintiff has not alleged or produced evidence that any retaliation against him was on account of his having opposed conduct made illegal by Title VII, to wit, race discrimination, his claim must fail.

The plaintiff has also made allegations that he was retaliated against for having filed a workers' compensation claim. (Amend. Compl. ¶ 46; Pl. Resp. at 13, 15.) It is not clear whether the plaintiff intended a state law claim for violation of S.C. Code § 41-1-80, which prohibits unlawful retaliation against employees who file a workers' compensation claim. But, because the plaintiff cannot pursue his federal claims against the defendant pursuant to Title VII, the court would recommend that the district court decline to exercise supplemental jurisdiction over whatever state law claim based on retaliation for filing a workers' compensation he intended. *See* 28 U.S.C. § 1367(c)(3) (permitting a federal court to decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it has original jurisdiction); *see also Caughman v. South Carolina Dept. of Motor Vehicles*, 2010 WL 348375, at *5 (D.S.C. 2010).

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the defendants' motion for summary judgment [Doc. 79] be GRANTED as to all claims pending against them. Any claim for workers' compensation retaliation should be dismissed *without prejudice*. Because the case should not continue, the plaintiff's motion for subpoena [Doc. 95] should also be DENIED.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks
United States Magistrate Judge

June 12, 2013
Charleston, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

11

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).